

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

WK:RWN
F. #2024V00339

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 23, 2024

By ECF

The Honorable Edward R. Korman
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:   United States v. Harry Lee Napper
              Criminal Docket No. 96-912 (ERK)

Dear Judge Korman:

       The government respectfully submits this letter in response to the defendant's November 30, 2023 motion for a reduction in sentence (the "Motion") based on the "status points" amendment to the U.S. Sentencing Guidelines (the "Guidelines"). See ECF No. 603. Prior to the Guidelines amendment, the defendant had nine criminal history points and a Criminal History Category of IV. Under the status points amendment, the defendant would have seven criminal history points, which would result in the same Criminal History Category of IV. Therefore, this Court should deny the Motion, for the reasons set forth in more detail below.

I.      Factual & Procedural Background

       The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report ("PSR") prepared by the United States Probation Department ("Probation") on December 29, 1997.

       On June 18, 1997, the defendant was convicted after a month-long trial of the following counts charged in a superseding indictment: (1) conspiracy to commit robbery, in violation of 18 U.S.C. § 1951(a) (Count Four); (2) attempted robbery, in violation of 18 U.S.C. § 1951(a) (Counts Seven and Eleven); (3) use of a firearm in furtherance of crimes of violence, specifically in connection with the crime charged in Count Seven, in violation of 18 U.S.C. § 924(c) (Count Eight); (4) robbery, in violation of 18 U.S.C. § 1951(a) (Count Nine); (5) use of a firearm in furtherance of crimes of violence, specifically in connection with the crime charged in Count Nine, in violation of 18 U.S.C. § 924(c) (Count Ten); and (6) illegal possession of a

firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Eighteen). See Pre-Sentence Investigation Report ("PSR") at 4.

As detailed in the PSR, the defendant's trial convictions arose from his connection to a Baltimore, Maryland based group with connections in Brooklyn, New York, which undertook an extensive string of robberies in 1994 and 1995. The defendant's convictions are specifically related to his conduct during several robberies and attempted robberies in October 1995, as described in greater detail below. See PSR ¶¶ 1, 28-30, 32-33.

On October 1, 1995, the defendant and two co-defendants, Audley Facey and Carmelo Quinones, traveled from Baltimore, Maryland to Brooklyn, New York for the purposes of committing a robbery. PSR ¶ 28. On the next day, in the morning of October 2, 1995, the defendant and his co-defendants Ted Davis, Quinones and Facey traveled to the intended target, Pavillion Jewelers, to devise an escape route after the completion of the planned robbery. Id. The defendant, Quinones and Facey then met with several other co-defendants, who were waiting at the intersection of 37th Street and Church Avenue. Id. The defendant drove a car which was stolen by co-defendants Davis and Facey. Id. The defendant, who possessed a firearm at the time, was to hold the door open for the others to have easy access into and out of the store for the robbery, and act as the getaway driver. Id. Co-defendant Royston Prince first approached the store, at which time an unidentified man who had been sitting in front of the store drew a firearm and hid behind a car. Id. The defendant and a co-defendant then fled the location in the stolen getaway car. Id. The defendant and several other co-defendants all convened later that day, and further planned a robbery for the next day at another Brooklyn jewelry store, Fifth Avenue Jewelers. Id.

On October 3, 1995, the defendant and co-defendants robbed Fifth Avenue Jewelers at gunpoint. PSR ¶¶ 29-30. The defendant held the door open for his co-defendants to enter and exit the store, possessed and drew a firearm, and acted as the getaway driver. Id. During the robbery, co-defendant Prince shot the proprietor of the store in the neck, causing him to sustain life-threatening injuries and a partial paralysis to one side of his body. Id.

Additionally, the defendant was convicted at trial for his role in an attempted robbery of Metro Brokers on October 15, 1995. Id.

Finally, on October 24, 1995, the defendant provided a firearm used by a co-defendant during the completed robbery of Metro Brokers. PSR ¶ 33.

At the defendant's original sentencing for these crimes, he was determined to have nine criminal history points, placing him in Criminal History Category IV. Id. ¶ 90. Based on his 1991 conviction in Maryland for possession of a sawed-off shotgun, for which he was sentenced to three years' custody and three years' probation, the defendant received three criminal history points. Id. ¶ 85. Based on his 1992 conviction in Maryland for possession of an unregistered rifle/shotgun, for which he was sentenced to three years' custody and 18 months' probation, the defendant received three additional criminal history points. Id. ¶ 86. Because the defendant committed the instant offense while on post-release supervision for his 1992 conviction, two criminal history "status points" were added. Id. ¶ 88. Because the defendant committed the instant offense less than two years after his release from custody on this latter

conviction, one more criminal history point was added under the U.S.S.G. § 4A1.1(e) that was in effect at that time, resulting in a total of nine criminal history points. Id. ¶¶ 89-90.

On March 27, 1998, the Court sentenced the defendant principally to 421 months' incarceration and three years' supervised release and imposed a $350 special assessment. In particular, the sentence consisted of (a) 121 months' imprisonment on Counts Four, Seven, Nine, Eleven and Eighteen each to run concurrently, (b) 60 months' imprisonment to run consecutively on Count Eight, and (c) a consecutive sentence of 240 months' imprisonment on Count Ten. See ECF No. 223.

On June 21, 2022, in United States v. Taylor, 142 S. Ct. 2015 (2022), the Supreme Court held that attempted Hobbs Act robbery is not a "crime of violence" under 18 U.S.C. § 924(c)(3)(A). See 142 S. Ct. at 2021. Following Taylor and United States v. Davis, 139 S. Ct. 2319, 2336 (2019) (invalidating the residual clause of § 924(c)(3)(B) as unconstitutionally vague), the defendant's conviction for attempted Hobbs Act robbery no longer qualified as a "crime of violence" to support a conviction of 18 U.S.C. § 924(c) as charged in Count Eight. Consistent with Taylor, on February 9, 2023, the Court granted the defendant's unopposed motion to vacate Count Eight. See ECF No. 595.

Probation issued an Addendum to the Presentence Report (the "Addendum") on February 3, 2023, re-calculating the defendant's Guidelines range in light of the vacatur of Count Eight. Probation applied the same Criminal History Category of IV. Based on the defendant's total offense level of 31, Probation calculated a Guidelines range of 211 to 240 months.[1]

On July 13, 2023, the Court re-sentenced the defendant following the vacatur of Count Eight to 228 months' incarceration and two years' supervised release. In particular, the defendant's new sentence consisted principally of (a) 168 months' imprisonment on Counts Four, Seven, Nine and Eleven each to run concurrently, (b) 120 months' imprisonment on Count Eighteen to run concurrently, and (c) a consecutive sentence of 60 months' imprisonment on Count Ten. See ECF No. 599. The Bureau of Prisons website lists his projected release date as September 20, 2030.[2]

On November 30, 2023, the defendant filed the instant motion for a reduction in sentence based on amendments to the application of "status points" in Guidelines. ECF No. 603 at 1. Probation issued a Supplemental Presentence Report (the "Supplemental PSR") with a new

---

[1]    The recommendation of 211 to 240 months' imprisonment calculated by Probation in the Addendum appears to be an error. The government's calculation based upon the Sentencing Guidelines reflects a range of 211 to 248 months' imprisonment.

[2]    On November 16, 2012, while serving his sentence for the instant offense, the defendant received an additional sentence of 240 months incarceration after pleading guilty to Conspiracy to Commit Murder for his role in the murder of a fellow inmate while incarcerated at the United States Penitentiary in Beaumont, Texas, located in the Eastern District of Texas. See 11-CR-00062-MAC; ECF No. 102. This sentence is to run consecutively to the sentence the defendant is currently serving for the above-captioned matter.

calculation of the defendant's Criminal History Category following the Guidelines amendments. As set forth in the Supplemental PSR, upon application of the amended Guidelines, the defendant remains in Criminal History Category IV and his Guidelines range remains the same as it was when he was last sentenced.  See Supplemental PSR at 4.  As such, Probation determined that the defendant is ineligible for a sentence reduction.  Id.  For the reasons set forth below, the government agrees with Probation and opposes any reduction in the defendant's sentence.

II.    Applicable Law

A.    "Status Points" Amendment to the Guidelines

At the time of the defendant's original sentencing in 1998 and his re-sentencing in 2023, U.S.S.G. § 4A1.1(d) provided that any defendant who committed the instant offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status" received two additional criminal history points.  In November 2023, Part A of Amendment 821 to the Guidelines amended U.S.S.G. § 4A1.1 to (a) eliminate status points for any defendant who received six or fewer criminal history points for his prior sentences, and (b) apply one point, instead of two, for any defendant who received seven or more criminal history points for his prior sentences.

On August 24, 2023, the Commission decreed that this change applies retroactively.  See U.S.S.G.§ 1B1.10(d) (listing Amendment 821, Part A).  The Commission further directed that a court granting relief may not order a defendant with a sentence reduced pursuant to the change to be released any earlier than February 1, 2024.  See § 1B1.10(e)(2) (Nov. 1, 2023).

B.    "Recency" Amendment to the Guidelines

At the time of the defendant's original sentencing, U.S.S.G. § 4A1.1(e) provided that any defendant who committed the instant offense "less than two years after release from imprisonment on a sentence counted under (a) or (b)" (i.e., a sentence of at least 60 days' imprisonment), and had already received two additional "status points" under U.S.S.G. § 4A1.1(d), received one further criminal history point.  In November 2010, Amendment 742 to the Guidelines struck the former U.S.S.G. § 4A1.1(e), eliminating the additional "recency" point(s) for offenses committed within two years of release from imprisonment.

Unlike the "status points" amendment, Amendment 742 does not apply retroactively and cannot be the basis for a reduction in sentence.  See U.S.S.G. § 1B1.10(d).  See also United States v. Mitchell, 402 Fed. App'x 560, 562 (2d Cir. 2010) (noting that the deletion of the "recency" provision was not made retroactive); United States v. Bonds, 839 F.3d 524, 526 (6th Cir. 2016) ("courts do not have the authority to consider the non-retroactive Amendment 742 in determining eligibility for a § 3582(c)(2) reduction"); United States v. Wayne, 516 Fed. App'x 135, 137 (3rd Cir. 2013).

C.    Motions for Resentencing

Title 18 U.S.C. § 3582(c)(2) provides:

[I]n the case of a defendant who has been sentenced to a term of
imprisonment based on a sentencing range that has subsequently been
lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o),
upon motion of the defendant or the Director of the Bureau of Prisons, or
on its own motion, the court may reduce the term of imprisonment, after
considering the factors set forth in section 3553(a) to the extent that they
are applicable, if such a reduction is consistent with applicable policy
statements issued by the Sentencing Commission.

In § 1B1.10 of the Guidelines, the Sentencing Commission has identified the
circumstances in which a defendant's sentence may be reduced pursuant to this authority.  As
stated in § 1B1.10(a)(2)(B), if "an amendment listed in subsection (d) does not have the effect of
lowering the defendant's applicable guideline range," then a sentence reduction is not authorized.

D.    Retroactive Application of Guidelines Changes

In Dillon v. United States, 560 U.S. 817 (2010), the Supreme Court addressed the
process for application of a retroactive Guideline amendment, emphasizing that § 1B1.10 is
binding.  The Court declared: "Any reduction must be consistent with applicable policy
statements issued by the Sentencing Commission."  Id. at 821.  The Court instructed district
courts to follow a two-step approach:

At step one, § 3582(c)(2) requires the court to follow the Commission's
instructions in §1B1.10 to determine the prisoner's eligibility for a
sentence modification and the extent of the reduction authorized.
Specifically, § 1B1.10(b)(1) requires the court to begin by "determin[ing]
the amended guideline range that would have been applicable to the
defendant" had the relevant amendment been in effect at the time of the
initial sentencing. "In making such determination, the court shall
substitute only the amendments listed in subsection (c) [now subsection
(d)] for the corresponding guideline provisions that were applied when the
defendant was sentenced and shall leave all other guideline application
decisions unaffected."  § 1B1.10(b)(1).

. . .

At step two of the inquiry, § 3582(c)(2) instructs a court to consider any
applicable § 3553(a) factors and determine whether, in its discretion, the
reduction authorized by reference to the policies relevant at step one is
warranted in whole or in part under the particular circumstances of the
case.

Dillon, 560 U.S. at 827.

III.    <u>Analysis</u>

    The defendant is ineligible for a reduction in his sentence because the retroactive application of the "status points" amendment does not change his applicable Guidelines range.

    At his original sentencing, the defendant had nine criminal history points, two of which were the result of his being on post-release supervision, placing him in Criminal History Category IV.  Applying the "status points" amendment retroactively, in light of his six criminal history points for his prior sentences, he would receive zero additional "status points."  <u>See</u> U.S.S.G. § 4A1.1(e).  However, the one criminal history point that was added because the defendant committed the offense within two years of his release from imprisonment would remain applicable, because Amendment 742 does not apply retroactively.  <u>See</u> U.S.S.G. § 1B1.10(d); <u>Mitchell</u>, 402 Fed. App'x at 562.  This results in a total of seven criminal history points.  With seven criminal history points, he remains in Criminal History Category IV and faces the same Guidelines range of 211 to 248 months that were applicable at his re-sentencing.  Accordingly, under <u>Dillon</u> and U.S.S.G. § 1B1.10, no reduction in the defendant's sentence is permitted.

IV.    <u>Conclusion</u>

    For the foregoing reasons, the defendant's motion for a reduced sentence should be denied.

          Respectfully submitted,

          BREON PEACE
          United States Attorney

     By:  /s/ Russell Noble
          Russell Noble
          Assistant U.S. Attorney
          (718) 254-6178

cc:  Clerk of the Court (ERK) (by ECF)
    Harry Lee Napper (by Certified Mail)